**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| ALD SOCIAL LLC,<br><br>      Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Civil Action No. 6:22-cv-00972<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS
PLAINTFF ALD SOCIAL, LLC'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

    A.    ALD Social's Asserted Patents ................................................................................ 2

    B.    Google's Accused Products ..................................................................................... 6

III. LEGAL STANDARDS ........................................................................................................ 8

IV. ARGUMENT ........................................................................................................................ 9

    A.    The Complaint Must Be Dismissed Because It Fails To Plausibly Allege That The Accused Products Include A "Crowd Risk Determinant" Or "Determining A Crowd Risk" ................................................................................... 9

    B.    The Complaint Should Be Dismissed with Prejudice ........................................... 11

V. CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ballard v. Devon Energy Prod. Co., L.P.*,
    678 F.3d 360 (5th Cir. 2012) ...........................................................................................11

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ..................................................................................8, 9, 11

*CPC Pat. Techs. Pty Ltd. v. Apple Inc.*,
    No. 21-165-ADA, 2022 WL 118955 (W.D. Tex. Jan. 12, 2022) ................................2, 8, 9

*Estech Sys., Inc. v. Regions Fin. Corp.*,
    No. 20-00322-ADA, 2020 WL 6324321 (W.D. Tex. Oct. 28, 2020) .............................8, 9

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
    No. 6:21-CV-00677-ADA, 2022 WL 2019296 (W.D. Tex. June 6, 2022) ...................1, 11

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    No. 5:19-CV-243-H, 2021 WL 3030066 (N.D. Tex.) .......................................................11

*Vervain, LLC v. Micron Tech., Inc.*,
    No. 21-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ........................................8

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) .............................................................................................................1

I.    INTRODUCTION

ALD Social LLC ("Plaintiff" or "ALD Social") cannot plausibly plead infringement because the asserted patents simply do not map to the accused products. The asserted patents are about detecting risks posed by crowds, such as mobs and riots. As the provisional patent application for both asserted patents explains: "People can't predict mobs and that is the problem. Nothing out there has achieved this yet. This invention seeks to remedy that." Provisional Application No. 61/573,112. **Ex. A** (the "'112 provisional" or "'112 prov.") at 1:24-25.[1] In an attempt to solve that problem, ALD Social purportedly invented an "Aggregate Location Dynometer (ALD)," which analyzes the location of wireless devices to "predict public safety risks, e.g., the unexpected impending formation of a flash mob, or a riot, etc." '054 patent at 2:59-60. But ALD Social does not allege that any Google product detects risks from crowds, let alone predicts mobs. Instead, ALD Social accuses infringement against Google products that relay messages about ***natural disasters*** (e.g., floods, hurricanes, and wildfires). Natural disasters are not "crowd risks," and ALD Social points to nothing in the alleged products suggesting that they include a "***crowd risk determinant***" or "***determin[e]*** a ***crowd risk***," limitations required by each patent claim.

A patent's claims define the scope of the patent owner's rights, and each element or limitation of the claim is required to show infringement. *Warner-Jenkinson Co. v. Hilton Davis*

---

[1] The contents of the provisional, "as matters of public record, are subject to judicial notice and appropriate for this Court to consider at the pleading stage." *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 WL 2019296, at *6 (W.D. Tex. June 6, 2022) (collecting cases). The '112 provisional application is also incorporated by reference into the Asserted Patents (*see, e.g.*, '054 patent at 1:4-10). Defendants therefore respectfully request that the Court take judicial notice of the provisional application at this stage as other courts in this District have done with public records relating to asserted patents. *See Grecia*, 2022 WL 2019296, at *6 (taking judicial notice of the patent owner's communications with the Patent Office in proceedings relating to the asserted patents).

*Chem. Co.*, 520 U.S. 17, 29 (1997).  To survive a motion to dismiss, the "complaint must allege facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products."  *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, No. 21-165-ADA, 2022 WL 118955, at *1 (W.D. Tex. Jan. 12, 2022).  Because ALD Social does not allege any facts that create a plausible inference that any of the accused Google products "determin[e] a crowd risk" or include the required "crowd risk determinant," at least one of which would be required for the accused Google products to infringe, ALD Social's Complaint for Patent Infringement (ECF No. 1; "Complaint" or "Compl.") fails to state a claim under the *Twombly/Iqbal* standard.

## II.    BACKGROUND

### A.    ALD Social's Asserted Patents

ALD Social filed its Complaint against Google on September 16, 2022, accusing Google of infringing U.S. Patent Nos. 9,198,054 and 9,402,158.[2]  *See, e.g.*, Compl. ¶¶ 12-13.  Both Asserted Patents are titled "Aggregate Location Dynometer (ALD)."  *See* ECF No. 1-1 at Exs. A and B.  The patent application that led to the '158 patent was a continuation of the application for the '054 patent, so the Asserted Patents share the same figures and the same written description.  *See id.*  Although the claims of the Asserted Patents differ somewhat, they share many of the same terms and limitations.

The application process for the Asserted Patents began on September 2, 2011 when the applicants filed Provisional Application No. 61/573,112.  **Ex. A** (the "'112 provisional" or "'112 prov."); *see also* ECF No. 1-1 at 2, 19 (Asserted Patents citing to the '112 provisional).  The '112 provisional states that the purported invention is in "a new technical field" that the applicant coins "Aggregate Location Dynamics."  '112 prov. at 1.  The provisional defines Aggregate

---

[2] Hereinafter the "'054 patent" and the "'158 patent;" collectively, the "Asserted Patents."

Location Dynamics as "a predictor for mobs, riots, or other public safety risks posed by large crowds of human beings." *Id.* at 2. The applicant explains the purpose of the purported invention of the Asserted Patents is to predict mobs: "People can't predict mobs and that is the problem. Nothing out there has achieved this yet. This invention seeks to remedy that." '112 prov at 1:24-25. The alleged invention seeks to accomplish this goal by "giv[ing] the right people a bird's eye view of [an] army's formation, as if they were generals up 1000 feet in the sky, looking straight down, and could see a dot for every head, or a dot for every group of heads" and allowing those "right people" to "make sense, that is know what is happening or what is about to happen, by looking at a bunch of location dots, each dot representing an individual device location or a cell tower location in a given geographic boundary." *Id.* at 2. The invention "analyz[es] the aggregate locations of persons in the network and calculate[s] the risk." *Id.* The applicant also notes that the invention is suitable for any group "wanting as much warning as possible about riots and other crowd related risks." *Id.* at 8.

Consistent with the '112 provisional, the Asserted Patents claim an "Aggregate Location Dynometer (ALD)" that issues alerts where there is "problematic crowd risk." '054 patent at Abstract; '158 patent at Abstract. The Asserted Patents' shared description states: "The present invention introduces an Aggregate Location Dynometer (ALD), an analytical server utilizing location based services (LBS) on a network to predict public safety risks, e.g., the unexpected impending formation of a flash mob, or a riot, etc." '054 patent at 2:59-60.[3]

According to the patentee, the Aggregate Location Dynometer predicts public safety risks posed by large crowds of human beings by analyzing "a bird's-eye view of people formation."

---

[3] Because the Asserted Patents share the same specification and figures, citations are made only to the '054 patent to refer to the same passage or figure in both Asserted Patents.

'054 patent at 2:57-63.  To determine whether the formation of people poses a crowd risk, the Aggregate Location Dynometer uses a "Crowd Risk Determinant."  "The Crowd Risk Determinant requests location information associated with a plurality of wireless devices in a given area regarding a respective viral event.  The Crowd Risk Determinant determines if the viral event also indicates a crowd safety risk, based on the shape and movement of observed wireless devices."  '054 patent at Abstract; '158 patent at Abstract.

The Asserted Patents include figures to illustrate this concept, where dots represent the locations of people:



FIG. 7

'054 patent at Fig. 7; *see also* '112 prov. at 5.  The Asserted Patents explain that this figure shows a "crescent shape 103 in the geographical area 200" which "is recognized as a pattern to be wary of.  This crescent shape may represent a variety of different occurrences (e.g, a protest in front of a given location such as a court house, a famous author at a bookstore, etc.)."  '054 patent at 7:65-8:2.  The patentee explains how the Crowd Risk Determinant determines whether this pattern poses a crowd risk:  "Motion trends are also analyzed to assess crowd risk.  The

4

Crowd Risk Determinant 304 preferably determines whether the accumulation of wireless devices is becoming more or less dense about a central location and whether or not this behavior is expected based on trends and configured thresholds established for particular locations." '158 patent at 8:18-23.

Unsurprisingly given their field, neither the provisional nor specifications of the Asserted Patents mentions any risk other than those posed by large crowds of people.

Consistent with the patents' specifications, all of the claims of the Asserted Patents require "a crowd risk determinant" or "determining a crowd risk" based on, *inter alia*, the location of wireless devices. For example, asserted claim 1 of the '054 patent reads:

> 1. An aggregate location dynometer in a physical wireless network server, said aggregate location dynometer comprising:
>
>> a network monitor to monitor a wireless network for an indication of a viral event;
>>
>> a location aggregator to obtain a location of each of a plurality of wireless devices associated with said viral event;
>>
>> a **crowd risk determinant**, triggered by said network monitor, **to determine a crowd risk** based on an aggregation of said location of each of said plurality of wireless devices associated with said viral event; and
>>
>> an alert module to initiate an alert message relating to a public safety risk determined from an analysis of said viral event.

Asserted claim 1 of the '158 patent reads:

> 1. An aggregate location dynometer in a physical wireless network server, said aggregate location dynometer comprising:

> a network monitor to monitor a wireless network for an indication of a potential viral event indicated by an aggregation of current locations of a plurality of physical wireless devices associated with said potential viral event; and
>
> ***a crowd risk determinant*** to assess said aggregation of said current locations of said plurality of physical wireless devices pertaining to said potential viral event triggered by said network monitor.

The two claims copied above are the only claims of the Asserted Patents mentioned or addressed in ALD Social's Complaint or the attached charts.

### B.     Google's Accused Products

In its Complaint, ALD Social refers to the "Accused Instrumentalities" or "Accused Products" as "Google's emergency alert platform Crisis Response" (hereinafter, "Google Crisis Response") and "Google's Public Alerts platform" (hereinafter, "Google Public Alerts"). *See, e.g.*, Compl. ¶ 16. According to Plaintiff's own allegations, these services provide information about emergencies including "floods, wildfires, earthquakes, and hurricanes" to someone using Google's applications or services on a mobile phone. *See* ECF No. 1-1 at 36. For example, a person who is using Google Maps to navigate may see a warning that a hurricane could affect their planned route:



ECF No. 1-1 at 41.  As another example, a person looking for information using Google Search may see information about a wildfire:



*Id.* at 43.  Even when not actively using a Google application, a mobile phone may receive a notification about an emergency, such as a wildfire, flood, or earthquake.  *Id.* at 46-50.

      The infringement allegations for Google Public Alerts are similar to those for Google Crisis Response.  *See, e.g.*, ECF No. 1-1 at 51 (cited evidence for Google Public Alerts links to Google Crisis Response).  A user may be notified of certain emergencies via Google applications

on their phone. Specific emergencies identified in the charts attached to ALD Social's complaint are "active wildfires, tropical storms, floods, and earthquakes." *See id.* The primary difference in ALD Social's allegations between Google Crisis Response and Google Public Alerts is that Public Alerts focuses on the alerts being published through Google by partners such as public safety agencies whereas the Crisis Response allegations include Google features involved in detecting or forecasting natural disasters. *Compare* ECF No. 1-1 at 57-60 with *id.* at 43-45.

For both Accused Products, ALD Social's allegations relate only to alerts sent to warn users about natural disasters.

### III.   LEGAL STANDARDS

A "plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Accordingly, the "complaint must allege facts sufficient to create a plausible inference that ***each element*** of the claim is infringed by the accused products." *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, No. 21-165-ADA, 2022 WL 118955, at *1 (W.D. Tex. Jan. 12, 2022) (original emphasis). In other words, the standard "require[s] a plausible inference that an accused device meets all the limitations of the asserted claims." *See also Estech Sys., Inc. v. Regions Fin. Corp.*, No. 20-00322-ADA, 2020 WL 6324321, at *2 (W.D. Tex. Oct. 28, 2020) It is also not enough that the complaint "provides a claim chart or element-by-element mapping" especially where such charts only contain "conclusory allegations or allegations that merely restate the legal elements of a claim." *Vervain, LLC v. Micron Tech., Inc.*, No. 21-00487-ADA, 2022 WL 23469, at *7 (W.D. Tex. Jan. 3, 2022). In addition, a plaintiff can "subject its claims

to early dismissal by pleading facts that are *inconsistent* with the requirements of its claims." *Bot M8*, 4 F.4th at 1346 (emphasis added).

IV. **ARGUMENT**

   A. **The Complaint Must Be Dismissed Because It Fails To Plausibly Allege That The Accused Products Include A "Crowd Risk Determinant" Or "Determining A Crowd Risk"**

Each and every claim of the Asserted Patents requires a "crowd risk determinant" and/or "determining a crowd risk." For example, claim 1 of the '054 patent recites "a ***crowd risk determinant***, triggered by said network monitor, to ***determine a crowd risk*** based on an aggregation of said location of each of said plurality of wireless devices associated with said viral event." (emphasis added). Claim 1 of the '158 patent similarly recites: "a ***crowd risk determinant*** to assess said aggregation of said current locations of said plurality of physical wireless devices pertaining to said potential viral event triggered by said network monitor." (emphasis added). According to the patentee, the claimed Aggregate Location Dynometer "predict[s] public safety risks, e.g., the unexpected impending formation of a flash mob, or a riot, etc." ('054 patent at 2:54-56) by using a "Crowd Risk Determinant" to determine if there is a "crowd safety risk, based on the shape and movement of observed wireless devices." '054 patent at Abstract; '158 patent at Abstract. Because ALD Social does not allege the Accused Products include this required "Crowd Risk Determinant," ALD Social fails to plausibly allege infringement. *See CPC*, 2022 WL 118955, at *1; *Estech*, 2020 WL 6324321, at *2.

ALD Social does not allege that the Accused Products "determine" any "crowd risk"— *i.e.*, a risk from a crowd—as required by the claims. To the contrary, the only risks ALD Social identifies anywhere in its Complaint or the attached claim charts are natural disasters, not risks posed by crowds. In the claim charts for Google Crisis Response for the "crowd risk determinant" limitation, ALD Social alleges: "Google Crisis Response includes alert services for

9

various natural disasters and other emergencies including but not limited to floods, wildfires, earthquakes, and hurricanes." ECF No. 1-1 at 42. The additional text and screenshots for the limitation in the Crisis Response chart relate only to "floods, wildfires, [and] earthquakes." *Id.* at 42-45.

Similarly, in the claim charts for Google Public Alerts, ALD Social does not specify any "crowd risks," let alone a "crowd risk determinant," alleging instead:

> The Google Public Alerts platform can alert wireless mobile devices of a viral event within a particular geographical area when the devices within that particular geographical area receive an alert associated with said viral event by monitoring Google's public alert data through a wireless network. Using data from authorized alert originators and distributors for each particular geographical area, risk can be determined. For a list of partners, see https://support.google.com/publicalerts/#3249690.

ECF No. 1-1 at 57; *see also id.* at 80 (same). The screenshots cited therein do not identify any "crowd risk" or "crowd risk determinant" either. Even looking elsewhere in the claim charts for risks alleged to be determined by the Public Alerts platform, the only risks identified are "active wildfires, tropical storms, floods, and earthquakes." *Id.* at 51. These are, like those identified for Crisis Response, natural disasters—not crowd risks. *See id*.

Thus, the only risks that ALD Social alleges are determined by the Accused Products are "natural disasters and other emergencies including but not limited to floods, wildfires, earthquakes, and hurricanes" (*see, e.g.*, ECF No. 1-1 at 42) or "tropical storms" (*id.* at 51)—not "crowd risks." Crowds of people do not cause a flood, wildfire, earthquake, hurricane, or tropical storm. Indeed, these natural disasters can occur in areas completely unoccupied by people. That ALD Social does not identify any Google product or service that includes a "Crowd Risk Determinant" or otherwise "determin[es] a crowd risk" confirms that ALD Social cannot plausibly plead infringement. Rather, the allegations that Google's products identify and

alert users of natural disasters are, in fact, inconsistent with the requirement in each and every claim of a "crowd risk determinant." *Bot M8*, 4 F.4th at 1346.

Where, as here, a limitation required in all claims of the Asserted Patents is clearly absent based on Plaintiff's own allegations, dismissal is warranted.

### B. The Complaint Should Be Dismissed with Prejudice

The Complaint should be dismissed with prejudice because any amendment would be futile. *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 364 (5th Cir. 2012). Plaintiff has pleaded its best case, and no amount of amending can change that the Google Accused Products do not determine a "crowd risk" as claimed.

In fact, ALD Social has not just failed to plausibly allege that the Accused Products determine a crowd risk or include the claimed crowd risk determinant; it has affirmatively alleged facts confirming that the Accused Products are directed to determining other risks, which is inconsistent with the presence of a crowd risk determinant. *See* ECF No. 1-1 at 42, 51; *see also* Section IV.A *supra*. Accordingly, any amendment would be futile. *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 WL 2019296, at *8 (W.D. Tex. June 6, 2022) (dismissing inadequately pled patent infringement complaint with prejudice); *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *11 (N.D. Tex.) (same).).

### V. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court dismiss with prejudice ALD Social's Complaint with prejudice.

Date: December 23, 2022

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: _____*Erica B. Giese*_____
Erica Benites Giese
Texas State Bar No. 24036212
egiese@jw.com
Amanda N. Crouch
Texas State Bar No. 24077401
acrouch@jw.com
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
(210) 978-7900
(210) 242-4646 (facsimile)

William T. Nilsson
Texas Bar No. 24123350
wnilsson@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000
(214) 953-5822 (facsimile)

Jordan R. Jaffe (*pro hac vice pending*)
Cal. Bar No. 254886
jjaffe@wsgr.com
Catherine Lacey (*pro hac vice pending*)
Cal. Bar No. 291591
clacey@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Suite 330
San Francisco, CA 94105-1126
(415) 947-2000
(415) 947-2099 (facsimile)

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.

                                                                                                               Erica Benites Giese